UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                                    Case No. 18-CR-76

JEREMY C. WADE,

          Defendant.

# REPORT AND RECOMMENDATION

**1. Facts and Procedural History**

On April 17, 2018, the grand jury returned an indictment charging Jeremy C. Wade with four counts of impersonating an officer or employee of the United States, in violation of Title 18, United States Code, Section 912. On June 11, 2018, Wade filed a motion to suppress. (ECF No. 18.) Neither he nor the government requested an evidentiary hearing. Instead, Wade offers the facts contained in police reports, which he submitted with his motion, as the factual basis for his motion. (ECF No. 18 at fn. 1.)

On the evening of March 1, 2018, Wade went to the Racine Police Department in response to a request from Racine Police Department Investigator Craig Klepel. (ECF No. 18-1 at 3.) Klepel was investigating reports that Wade had been stalking a woman

and identifying himself as a DEA special agent. The victim reported that on January 25, 2018, Wade arrived at her house driving a large, white Cadillac SUV and wearing a badge and a holstered semi-automatic pistol. (ECF No. 18-4 at 3.) Wade stated he was looking for "Zach Light," and produced a picture for her to look at. (ECF Nos. 18-1 at 2-3; 18-4 at 3.)

The victim also reported finding a business card in her mailbox on February 2, 2018, which was made to look like a DEA business card, listed the name "Jeremy C. Wade," identified him as a "special agent," and provided Wade's phone number. (ECF No. 18-1 at 3; 18-4 at 3.) On the back of the card was written a message referring to Wade's prior contact with the victim. The victim also reported Wade repeatedly tried to contact her via Facebook, including under an alias.

During an interview with Klepel, Wade stated that he was "always armed," owned many firearms, and that he had left his 9mm Hi-Point in his vehicle. (ECF No. 18-1 at 4.) "Wade confessed to being at [the victim's] residence while armed with a handgun." (ECF No. 18-4 at 4.)

Wade was not then nor has he ever been employed as a DEA special agent. (ECF No. 18-4 at 4.) Klepel arrested Wade for stalking and for impersonating a peace officer. (ECF No. 18-1 at 5.) Klepel then took the key fob he took from Wade and went to "the large municipal parking lot located in the 800 blk of center street," where he located the white Cadillac Escalade Klepel knew Wade drove. (ECF No. 18-1 at 5.) In his report,

2
Case 2:18-cr-00076-PP    Filed 07/03/18    Page 2 of 15    Document 22

Klepel stated that, because Wade had said that he had a gun in his vehicle, "it was imperative as community caretakers to locate the weapon." (ECF No. 18-1 at 5.) According to Klepel, "It was my intent to secure Wade's vehicle as evidence so we completed an inventory search prior to towing." (ECF No. 18-1 at 5.) Klepel and another investigator made "a sweep through the vehicle," locating a loaded black Hi-Point .45 caliber pistol and "a plastic store package for a holster." (ECF No. 18-1 at 2.) An officer photographed the vehicle, which was then towed to the impound lot. (ECF No. 18-1 at 2.)

The next day, March 2, 2018, Investigator Klepel sought and obtained a search warrant for the Escalade. (ECF No. 18-4 at 1.)

### 2. Parties' Arguments

Wade contends that the March 1, 2018 search of his vehicle was unlawful. Therefore, any evidence recovered pursuant to that search must be suppressed. And because the evidence recovered during the March 1 search was used to support the request for a search warrant, evidence obtained pursuant to that subsequent search, which took place the next day, must also be suppressed. "Moreover, Wade submits that when officer Klepel took his key fob and used it to locate his vehicle, this was another seizure and search, both implicating the Fourth Amendment and requiring a warrant or some other lawful justification." (ECF No. 18 at 4.)

3

The government argues that the police lawfully impounded the Escalade for evidentiary purposes. (ECF No. 19 at 5.) According to the government, given that the officers knew that a firearm was in the vehicle, at a minimum it would have been unreasonable for them to leave the vehicle parked in a public parking lot after arresting Wade. (ECF No. 19 at 7.)

3. Analysis

   **3.1. Initial Search and Impoundment of the Vehicle**

   **3.1.1. Locating the Vehicle with the Fob**

The court finds that Wade's argument regarding the seizure of his key fob and its use to locate the vehicle undeveloped. But, in any event, the seizure of the fob was authorized as a search incident to arrest. *See Virginia v. Moore*, 553 U.S. 164, 177 (2008). And the court finds no authority concluding that using a key fob to identify a vehicle constitutes an unreasonable search under the Fourth Amendment. *See United States v. Dasinger*, 650 F. App'x 664, 672 (11th Cir. 2016) ("Under the totality of circumstances, Hartzig's manipulation of the keys and key fob was not an unreasonable search or seizure in violation of the Fourth Amendment."); *United States v. Williams*, 413 U.S. App. D.C. 223, 230, 773 F.3d 98, 105 (2014) ("Neither this circuit nor any other has held that an officer's warrantless activation of a key fob to locate the vehicle to which it corresponds constitutes a search, let alone an unconstitutional one."); *United States v. Cowan*, 674 F.3d 947, 955 (8th Cir. 2012) ("Even if Detective Canas' use of Cowan's key fob to locate the

car was a search or seizure, it would be reasonable under the Fourth Amendment's automobile exception.").

### 3.1.2. Community Caretaker Exception

The court also rejects the government's assertion that the warrantless search for the gun was justified under the community caretaking exception to the warrant requirement, pursuant to which police actions taken to protect the public rather than for criminal law enforcement purposes are exempt from the Fourth Amendment's warrant requirement, *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553 (7th Cir. 2014). Investigator Klepel's assertion that "it was imperative as community caretakers to locate the weapon" is unfounded. The gun was apparently left in a locked vehicle. The government offers no facts indicating that it was visible to a person looking into the vehicle; the report says only that it was located "in the rear seat area of the truck." (ECF No. 18-1 at 5.)

Granted, guns in vehicles often create exigencies justifying warrantless searches. *See United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996) (holding exigent circumstances justified search of trunk when officer observed the defendant point the gun at another person, toss the gun in the trunk, and slam the lid, with the keys still in the trunk's lock) (citing *United States v. Ware*, 914 F.2d 997, 1001 (7th Cir. 1990) (holding that retrieval from a car of a gun believed to have been used in a recent robbery was justified as exigent circumstances); *United States v. White*, 607 F.2d 203, 208 (7th Cir. 1979) (averting

5

possible danger to police and the public justified a search for missing gun in automobile)). But the court finds no such exigency here. Guns are routinely and lawfully stored or temporarily secured in vehicles when the owner is home or entering a place, such as a police station, where private persons are prohibited from possessing a firearm.

### 3.1.3. Decision to Impound the Vehicle

Thus, the court turns to the impoundment of the vehicle. "The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." *United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010) (quoting *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996)). Wade states that the car was legally parked and, if given the opportunity, he could have had it speedily removed. Therefore, he argues, the vehicle was unlawfully impounded.

But Wade's argument overlooks the important caveat that allows the police to impound the vehicle if "it is supported by probable cause of criminal activity." Wade admitted that he had a gun in the vehicle he drove to the police station. That gun was evidence of his alleged impersonation of a DEA agent. Wade disputes this, arguing that "the gun didn't further the crime." (ECF No. 20 at 7.) But just as displaying a badge might not be unlawful on its own (depending on the context), Wade's open display of

6

Case 2:18-cr-00076-PP    Filed 07/03/18    Page 6 of 15    Document 22

the gun, when combined with allegations that he identified himself as a DEA agent, supports the government's allegation that he "did falsely assume and pretend to be an officer and employee of the United States acting under the authority thereof …." (ECF No. 1 at 1.)

In other words, the display of a gun in a context such as that here, where the person also shows a badge and represents that he is a DEA agent, furthers the impression that the person is, in fact, a law enforcement officer. Thus, the gun was evidence of a crime. Because Investigator Klepel had probable cause to believe evidence of a crime would be found in the vehicle, he could lawfully impound it. *See Cartwright*, 630 F.3d at 614 (quoting *Duguay*, 93 F.3d at 353); *see also United States v. Khan*, No. 15-cr-00286, 2017 U.S. Dist. LEXIS 82493, at *38 (N.D. Ill. May 31, 2017).

Moreover, the vehicle itself was evidence of a crime. Wade disputes this, stating that "transportation is not a component of the alleged offense, and seizing the vehicle does not prove the offense." (ECF No. 20 at 7.) However, that argument looks at the vehicle's evidentiary value too narrowly. The victim reported that the person identifying himself as a DEA special agent drove "a large white SUV, possibly a Cadillac." The fact that Wade's vehicle was a white Cadillac SUV supports the inference that Wade was the person who presented himself as a DEA agent to the victim. The court acknowledges that photographs might have sufficed to identify the vehicle Wade was driving, but the court does not understand the Constitution as foreclosing seizure.

7

*Cf.* C*ady v. Dombrowski*, 413 U.S. 433, 447 (1973) ("The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable.").

Wade relies on *Duguay,* in which the court stated, "Standardized criteria or established routine must regulate inventory searches. Among those criteria which must be standardized are the circumstances in which a car may be impounded." 93 F.3d at 351 (internal citation and quotation marks omitted). And it is true that the government has not established that it impounded Wade's vehicle pursuant to any standardized criteria or established routine of the Racine Police Department. But the court does not read *Duguay* as requiring that standardized criteria or an established routine must regulate inventory searches even when a vehicle is seized based on probable cause to believe that it contains evidence of a crime or that it is, itself, evidence of a crime.

The concerns that underlie the need for policies with respect to inventory searches—that police will use impoundment and inventory searches as a pretext for investigative searches, *see, e.g., Florida v. Wells*, 495 U.S. 1, 4 (1990)—are not present when police seize a vehicle because they already have probable cause to believe that it is evidence of a crime or that it contains evidence of a crime. As discussed below, police already can search the vehicle under the automobile exception to the search warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S.

798, 820-821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found."); *United States v. Leiva*, 821 F.3d 808, 817 (7th Cir. 2016). There is no need for pretext.

### 3.1.4. Automobile Exception to Search Warrant Requirement

More than merely impound it, Investigator Klepel could lawfully search the vehicle for the gun. Under the automobile exception to the search warrant requirement, "[t]he police do not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014) (citing *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010); *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010); *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009)); *see also Cady v. Dombrowski*, 413 U.S. 433, 441-42 (1973) ("warrantless searches of vehicles by state officers have been sustained in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent") (citing *Harris v. United States*, 390 U.S. 234 (1968); *Cooper v. California*, 386 U.S. 58 (1967)). Wade's efforts to distinguish this line of cases on the basis they ought to apply only to traffic stops conflicts with other authority from the Court of Appeals for the Seventh Circuit. *See United States v. Washburn*, 383 F.3d 638 (7th Cir. 2004) (holding that the automobile exception authorized the warrantless search of a vehicle in a hotel parking lot despite the vehicle being inaccessible to defendant); *see also United States v. Zahursky*, 580 F.3d 515, 522-23 (7th Cir. 2009) (following *Washburn* and

holding that the automobile exception authorized the search of defendant's vehicle parked in a Starbucks parking lot and inaccessible to defendant).

Moreover, having lawfully decided to impound the vehicle either because they had probable cause to believe it was itself evidence of a crime or that it contained evidence of Wade impersonating a DEA agent, the officers were entitled to conduct an inventory search of it consistent with the police department's written policy. *United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006) ("Warrantless inventory searches of cars in police custody are also proper as long as the police lawfully have custody of the vehicles.") (quoting *United States v. Jensen*, 169 F.3d 1044, 1048 (7th Cir. 1999)).

Wade contends that the inventory search was just a pretext to search for evidence. Ordinarily, subjective intent of the officers does not matter in the context of the Fourth Amendment, but inventory searches are an exception. *United States v. Edwards*, 769 F.3d 509, 516 (7th Cir. 2014); *Florida v. Wells*, 495 U.S. 1, 4 (1990) ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."). Thus, an inventory search is justified when it is performed for "the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (internal citations omitted).

According to Wade, the inventory search was obviously investigatory because no practical inventory was produced. Rather, in the portion of the form to list "property inside the vehicle" all that is written is "personal items." (ECF No. 18-3.) Such an ambiguous statement would hardly serve to protect police from claims of lost or stolen property.

The court accepts that the officers' motivation for performing the inventory search was to locate the gun. But that does not make the search impermissibly investigatory. Knowing that a gun was in the vehicle, it was obviously "personal property in the vehicle in need of protection from loss or damage while the vehicle was impounded" under the department's policy. (ECF No. 18-2 at 1); *see also Cady v. Dombrowski*, 413 U.S. 433, 448 (1973) (approving search of a towed vehicle's trunk when an officer reasonably believed it contained a gun).

**3.2 Search Warrant**

Having concluded that the initial search of the vehicle was lawful, nothing unlawful plausibly tainted the subsequent request for a search warrant. Thus, the court turns to Wade's arguments that the search warrant was invalid because the affidavit submitted in support of it "contained misleading and conclusory information, and because it lacked probable cause that criminal evidence would be found in the vehicle." (ECF No. 18 at 10-11 (footnote omitted).) According to Wade, "It was not reasonable to suspect that evidence of Wade's alleged impersonation would probably be in the

11
Case 2:18-cr-00076-PP   Filed 07/03/18   Page 11 of 15   Document 22

vehicle, much less that it would have probably remained there five weeks after the alleged incident." (ECF No. 18 at 11.)

Wade's argument that the affidavit contained "misleading or conclusory information" is undeveloped and unsupported by any citation to authority. (ECF No. 18 at 11, fn. 2.) The suggestion of misleading information in a search warrant affidavit calls to mind a challenge under *Franks v. Delaware*, 438 U.S. 154, 171 (1978), but a successful *Franks* challenge involves a multi-step analysis and an evidentiary hearing. *See United States v. Mullins*, 803 F.3d 858, 861-62 (7th Cir. 2015). Wade offers none of the required analysis, nor does he request a hearing. Consequently, the court finds any such argument forfeited. *See, e.g.*, *Barker v. Quick Test, Inc.*, 2016 U.S. Dist. LEXIS 32755 (N.D. Ill. Mar. 15, 2016) (citing *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)); *United States v. Sullivan*, No. 10 CR 821, 2011 U.S. Dist. LEXIS 117288, at *22 (N.D. Ill. Oct. 11, 2011) (citing *White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009)).

In addition, in reply Wade raises a new argument not raised in his initial brief. He argues that "the warrant fails to establish a nexus between the crime alleged (impersonating an officer) and the evidence sought (including all electronic devices, cellular phones, directories, tablets, computers and all data stored within any device). Such a general warrant lacks the requisite particularity to be valid." (ECF No. 20 at 9.)

Because this argument was not presented in his motion or in his initial brief, Wade has forfeited it and it is not properly before the court. *See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013).

Thus, the only argument that is properly before the court that Wade makes about the invalidity of the search warrant is his argument that the warrant is invalid because it is based on stale information.

"[T]here is no bright line rule for determining staleness." *United States v. Sutton*, 742 F.3d 770, 774 (7th Cir. 2014) (citing *United States v. Pappas*, 592 F.3d 799, 803 (7th Cir. 2010)). In assessing staleness, the nature of the object sought is "highly relevant," e.g., whether the object is consumable, like a controlled substance, or durable, like computer hardware. *See United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012).

Although Wade focuses on the search for evidence related to the offense of impersonating a peace officer (a state law analog to the federal charges he now faces), law enforcement at the time was also searching for evidence of stalking. (ECF No. 18-4 at 1.) Because Wade was believed to have contacted the victim through social media, electronic devices and the data stored on them were particularly relevant. This sort of evidence is not likely to be readily disposed of, even after five weeks, and there was probable cause that it would be found in Wade's vehicle.

Probable cause also exists to believe that such devices would yield evidence of impersonating a peace officer. For example, location data on a cellular phone might

13
Case 2:18-cr-00076-PP    Filed 07/03/18    Page 13 of 15    Document 22

establish that the phone was in proximity to the woman's residence at the relevant time. Proof that Wade had possession of a phone connected to the phone number listed on the fabricated business card would suggest that Wade created and delivered the business card.

Similarly, other items specified in the warrant—"firearms, firearm ammunition, firearm-related materials, counterfeit law enforcement identification, and related paraphernalia" —are durable objects not likely to be disposed of within the span of five weeks. Therefore, the court finds no basis to conclude the warrant was based on stale information.

### 4. Conclusion

Wade's vehicle was lawfully impounded because there was probable cause to believe both that it was evidence of a crime and that it contained evidence of a crime. Because there was probable cause to believe the vehicle contained evidence of a crime, officers were entitled to search it under the automobile exception to the warrant requirement. Alternatively, having decided to impound the vehicle, officers were entitled to search the vehicle to recover and secure the firearm Wade said was inside.

The court also rejects Wade's challenge to the search warrant. Because the evidence sought was not likely to have been disposed of in five weeks, the search warrant was not based on stale information.

**IT IS THEREFORE RECOMMENDED** that Wade's motion to suppress (ECF No. 18) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 3rd day of July, 2018.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge