UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                Case No. 18-cr-76-pp

JEREMY B. WADE,

        Defendant.

---

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. NO. 22), OVERRULING DEFENDANT'S OBJECTION (DKT. NO. 24) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 18)**

---

On June 11, 2018, the defendant filed a motion to suppress evidence recovered from his vehicle, arguing that the officer's actions violated the Fourth Amendment. Dkt. No. 18 at 3. Magistrate Judge William E. Duffin issued a report, recommending that this court deny the motion. Dkt. No. 22. The defendant objected to the recommendation, dkt. no. 24, the government responded, dkt. no. 26, and the defendant replied, dkt. no. 29. The court agrees that the motion does not require a hearing, and will adopt the recommendation, overrule the objection, and deny the motion to dismiss.

## I.    Background

The indictment charges the defendant with four counts of impersonating a special agent of the Drug Enforcement Administration, in violation of 18 U.S.C. §912(1) and (2). Dkt. No. 1. Count One alleges that the defendant openly

1

displaying a badge and firearm in an encounter with a citizen. Id. at 1. Count Two charges the defendant with demanding a thing of value by asking the citizen to tell him the whereabouts of an individual, and showing the citizen what purported to be a photograph of the person. Id. at 2. Count Three asserts that the defendant left a purported DEA business card at the citizen's residence. Id. at 3. Count Four charges the defendant with leaving a handwritten note on the back of the DEA business card, asking the citizen to contact him with the whereabouts of the same person. Id. at 4.

A.     Facts

Racine Police Department Investigator Craig Klepel, who was investigating a suspicious person complaint from a Racine resident, invited the defendant to the police station on March 1, 2018. Dkt. No. 18 at 1. The complainant had alleged that an individual had visited her home five weeks earlier (January 25, 2018), pretending to be a DEA agent. Id. She reported that the individual wore a DEA badge and openly carried a handgun on a holster. Id. She reported that the individual drove a large white SUV, possibly a Cadillac, and that he said he was looking for a particular individual. Dkt. No. 18-1 at 2-3. During the conversation, the defendant asked the complainant whether he looked familiar to her; when she replied that she didn't recognize him, the defendant became offended and left. Id. at 3. On February 2, 2018, the complainant found a DEA business card bearing the defendant's name in her mailbox, along with a handwritten note on the back offering to take her out. Id. In addition, after the January 2018 encounter, she received Facebook

messages associated with the defendant, and another from an account she believed to be associated with the defendant. Id.

Officer Klepel followed up by contacting the Milwaukee DEA office. He learned that the defendant was not a DEA employee. Id. Klepel then talked to the defendant's father, who admitted that he owned a Cadillac Escalade and that he was allowing his son to use it. Id. Klepel also learned that the defendant had used Facebook to contact the complainant, switching at one point to an alias. Id. at 4.

During the March 1 interview, the defendant admitted to Klepel (after receiving his Miranda warnings) that he knew the complainant (they had attended high school together), that he'd had a crush on her in high school, and that he'd gone to the complainant's home about a month prior. Id. at 4. He claimed that he did not know that the home belonged to the complainant, that he never went back and that he did not know anything about the business card. Id. He stated, however, that he was "always armed," that he owned a number of firearms and that he had a 9-mm Hi-Point in his vehicle. Id. At the end of the interview, Klepel arrested the defendant. Id. at 5.

According to the defendant, Klepel took the defendant's keys, and located his car in the municipal parking lot by pressing the fob button. Dkt. No. 18 at 2. Klepel searched the vehicle without a warrant, citing the community caretaker doctrine and the need to complete an inventory search before towing.

Dkt. No. 18-1 at 5. After locating a loaded, .45-caliber[1] Hi-Point pistol in the rear seat area and observing a plastic storage package for a holster on the floorboard, Klepel told the other officers that he was going to draft a search warrant. Id. Klepel directed Officer Buchanan to take photographs of the vehicle and the gun; Klepel later secured the gun in inventory. Id. Officer Buchanan was responsible for having the defendant's car towed to the impound lot. Id.

The government indicates that before the interview, "during a search of [the defendant] for weapons," the officers "saw a key fob." Dkt. No. 19 at 3. It also adds that on March 2, 2018, the officers obtained a warrant to search the car. Dkt. No. 19 at 3. They found business cards for "Jeremy Wade, DEA Special Agent," as well as a DEA special agent badge and lanyard for Jeremy Wade. Id.

B.     The Parties' Arguments to Judge Duffin

The defendant began by asserting that warrantless searches were *per se* unreasonable, and that the government bore the burden to show that some exception applied. Dkt. No. 18 at 3. The defendant argued that the "community caretaker" doctrine "require[d] an exigency," and that there were no exigent circumstances warranting a search of his car. Id. at 4. The defendant also argued that there were two, separate searches, both of which were

---

[1] The police report describes the gun as a .40-caliber on the first page, dkt. no. 18-1 at 1, but as a .45-caliber on the fifth page, dkt. no. 18-1 at 5.

unreasonable: one when Klepel took his key fob and used it to find his car, the other when Klepel actually searched the car. Id.

Next, the defendant argued that the impounding of his car also constituted a search, and that the government could not demonstrate any exception to the warrant requirement to justify the impoundment. Id.

Third, the defendant asserted that the inventory exception to the warrant requirement did not apply. Id. at 5. First, the defendant argued, the police did not have lawful custody of the car when they did the inventory search (again, because he alleged that the impoundment violated the Fourth Amendment). Id. at 6. Second, he argued that the search was investigative in nature, which was "incompatible with an inventory rationale." Id.

Finally, the defendant argued that the warrant Klepel obtained after he conducted the inventory search was invalid, because it relied on the fruit of the poisonous tree, contained misleading and conclusory information, and lacked probable cause to believe that the car would contain evidence of a crime. Id. at 10.

The government did not break the impounding of the car down into components, as the defendant had. Dkt. No. 19. It argued that the impoundment generally did not violate the Fourth Amendment. Id. at 5. The government recounted that the defendant had told the officers that he had driven to the interview himself and had told the police during the interview that there was a gun in the car, and that this correlated with the citizen complaint alleging that the defendant had openly displayed a gun while visiting the citizen

5

in the guise of a DEA agent. Id. The government argued that the "police had reason to impound the [car] for evidentiary purposes, if only to secure the firearm." Id. The government also argued that by the time the police impounded the car, they had arrested the defendant, and thus that there was no one available to drive it away. Id. The government argued that the officers needed to impound the car "to get it out of the public parking lot." Id. at 5-6. The government further asserted that because they knew that there was a gun in the car (by the defendant's admission), they needed to impound the car for public safety. Id. at 6. The government also disagreed with the defendant's assertion that the police department's impound policy was deficient, or that the police acted in contravention of that policy. Id.

Next, the government argued that the police had reason to conduct an inventory search once they'd impounded the car. Id. at 7. It argued that the defendant had told police that there was a gun in the car, and that the police conducted a "limited protective sweep," not a "full-blown search," to find the gun. Id. The government pointed out that there were other items in the car—the fake DEA business cards, etc.—that the officers did not find or take during that initial, limited search. Id. at 7-8. The government also argued that the police were justified in searching the car under the search-incident-to-arrest exception to the warrant requirement. Id. at 8. It further argued that the automobile exception applied. Id. The government argued that the officers' subjective intent in searching the car was irrelevant to the Fourth Amendment analysis; the question was whether they had probable cause. Id. at 10-11.

With respect to the validity of the search warrant, the government argued that the information provided in support of the warrant was not stale the search occurred two days after the inventory search, and the affidavit contained information about incidents that had taken place over the previous forty-five days or so. Id. at 11. The government also pointed out that at the time they sought the search warrant, the police knew more than they had before they conducted the inventory search. Id. at 12. They knew that the defendant had driven a Cadillac Escalade to the interview, id., and the complainant had reported that the fake DEA agent had arrived at her home in a "large white SUV, possibly a Cadillac," dkt. no. 18-1 at 2. While the defendant had stated in the interview that he'd driven to the police station in a Chevy Impala, when the police used the fob, they'd "found that he had actually driven the Escalade." Dkt. No. 18 at 9. And by the time the police requested the warrant, they had found in that Escalade a gun and holster, the items the complainant had reported that the defendant had when he appeared at her home. Id.

The defendant responded by reiterating that there were no exigent circumstances justifying the caretaker exception. Dkt. No. 20 at 2. He argued that under the Second Amendment, he had a right to have a gun in his car, and that it was unlawful for the police to seize the car solely because he had a gun in it. Id. The defendant argued that his father could have been contacted to drive the car away, or that he might have "bonded out" and driven the car home himself that day, or made arrangements for someone else to do so. Id. at 3. The defendant also responded that the government had not pointed out any

"standardized or established criteria for impounding vehicles." Id. He argued that the automobile exception did not apply—the government did not justify the police taking the key fob, or using it to find the car; the car itself was not evidence of a crime; and it was not illegal for the defendant to have a gun. Id. at 6-7. The defendant asserted that there was "no good reason why a warrant shouldn't have been sought or obtained before searching the vehicle." Id. at 8. Finally, the defendant reiterated that the warrant relied on tainted evidence, that there was no reason to believe that evidence from a January 2018 crime would be in the car as of March 2018, and that the good-faith exception did not cure the problem. Id. at 9.

C.      Judge Duffin's Recommendation

Judge Duffin recommended that this court deny the motion to suppress. Dkt. No. 22. He began by finding that the defendant had not developed his arguments regarding the fact that the police had seized his key fob and used it to find his car. Id. at 4. Judge Duffin found that the officers seized the key fob in a search incident to arresting the defendant. Id. He found no authority concluding that the use of a fob to identify a vehicle constituted an unreasonable seizure under the Fourth Amendment. Id.

Next, Judge Duffin turned to the government's argument that the search was justified under the community caretaker exception. Id. at 5. Judge Duffin rejected that argument, noting that the defendant had left the gun in a locked vehicle, and that the government had not submitted any evidence to indicate that someone outside the vehicle could have seen the gun. Id. Judge Duffin

8

conceded that a gun in a car *could* give rise to exigent circumstances, but he found the circumstances of this case distinguishable from the circumstances described in cases that found that exception applicable. Id. at 5-6.

With respect to the decision to impound the vehicle, Judge Duffin pointed out that the defendant's arguments—that the car was legally parked, and that he could have moved it or had someone move it—overlooked a critical fact: the fact that the plaintiff had admitted during the interview that there was a gun in the car. Id. at 6. The fact that there was a gun in the defendant's car provided the officers with probable cause to believe that the defendant had, as the victim had alleged, unlawfully impersonated a federal agent. Id. at 6-7. Because the officers had probable cause to believe that the defendant had committed that crime, Judge Duffin concluded, they had reason to impound the car that contained evidence of that crime. Id. at 6-7.

Judge Duffin also found that the vehicle itself constituted evidence of a crime. Id. at 7. He pointed out that the victim had reported that the person who impersonated the DEA agent had arrived in "a large white SUV, possibly a Cadillac." Id. 7. The fact that the police determined that the defendant had driven to the interview in a white Cadillac Escalade (and not, by the way, the Impala he'd told them he'd driven in) "support[ed] the inference that [the defendant] was the person who presented himself as a DEA agent to the victim." Id.

Judge Duffin acknowledged the defendant's argument that the Seventh Circuit had stated in United States v. Duguay that "[s]tandardized criteria or

established routine must regulate inventory searches. Among the criteria which must be standardized are the circumstances in which a car may be impounded." Duguay, 93 F.3d 346, 351 (7th Cir. 1996). He agreed that the government had not proven that the police impounded the defendant's car under any established police department criteria, or established routine. Id. He pointed out, however, that the "established policies or routines" requirement was relevant where the police impound the car on pretext. Id. Here, the officers had probable cause; Judge Duffin found there was no issue of pretext. Id.

With regard to the search itself, Judge Duffin found that the officers did not need a warrant, because they had reason to believe the vehicle contained evidence of a criminal activity; he found that the automobile exception applied. Id. at 9. He also concluded that the inventory search exception applied, because the police had lawful custody of the car. Id. at 10.

Finally, Judge Duffin concluded that because the impoundment and search were lawful, the warrant was not based on tainted, or illegally obtained, evidence. Id. at 11. Judge Duffin speculated that the defendant's argument that the warrant was based on "misleading evidence" sounded like a challenge under Franks v. Delaware, 438 U.S. 154, 171 (1978), but found that the defendant had not followed the procedures required for a Franks challenge. Id. at 12. Judge Duffin pointed out that the defendant had raised a new argument in his reply brief—the argument that the warrant didn't show a nexus between the crime of impersonating an officer and the evidence sought in the warrant. Id. Because the defendant had not raised this argument in his opening brief,

Judge Duffin found that the defendant had forfeited it. Id. at 12-13. Finally, as to the defendant's argument that the warrant was based on stale information, Judge Duffin noted that the police weren't investigating only the alleged impersonation of a police officer; they also were investigating the victim's allegation that the defendant had been stalking her via social media. Id. at 13. Given that, Judge Duffin concluded, electronic devices and evidence stored on them was relevant, and evidence like that "[was] not likely to be readily disposed of, even after five weeks, and there was probable cause that it would be found in [the defendant's] vehicle." Id. Judge Duffin also found that evidence of impersonating an officer could be found on electronic devices; cell site data could show that the defendant was close to the victim's home on the day of the alleged impersonation. Id. at 13-14. The same was true for other "durable" items listed in the warrant—guns, ammunition, law enforcement ID. Id. at 14.

D.     Defendant's Objections

The defendant objected to the following findings: (1) that the automobile exception applied under these circumstances; (2) that Klepel had probable cause to search or seize the vehicle; (3) that seizing the defendant's vehicle without a warrant was reasonable; (4) that the search was justified as an inventory search, and (5) that the warrant was sufficient. Dkt. No. 24. According to the defendant, the Fourth Amendment requires independent justifications for the seizure and the search. Id. at 2. He stated that the automobile exception (which he asserted did not apply here) authorized warrantless searches, not seizures, and that neither the car nor the gun

11

provided evidence of impersonation justifying a search. <u>Id.</u> at 2-5. He asserted

again that the officers obtained the warrant using tainted evidence. <u>Id.</u> at 6.

## II.   Analysis

### A.   <u>Standard of Review</u>

Federal Rule of Criminal Procedure 59(b) governs dispositive motion

practice initiated before magistrate judges. Parties have fourteen days to file

"specific written objections" to a magistrate judge's report and recommendation

on a dispositive motion. Fed. R. Crim. P. 59(b)(2). When reviewing a

magistrate's recommendation, the district judge reviews *de novo* the

recommendations of the magistrate judge to which a party timely objects. 28

U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court can "accept, reject, or

modify, in whole or in part, the findings or the recommendations made by the

magistrate." 28 U.S.C. §636(b)(1).

### B.   <u>Discussion</u>

A defendant bears the burden of showing that the police violated his

rights. <u>United States v. Evans</u>, 27 F.3d 1219, 1228 (7th Cir. 1994). If the police

search without a warrant, however, the burden shifts to the government to

show by a preponderance of the evidence that an exception to the warrant

requirement applies. <u>United States v. Longmire</u>, 761 F.2d 411, 417 (7th Cir.

1985).

The court begins by agreeing with Judge Duffin that the officers had

probable cause to arrest the defendant and charge him with impersonating a

peace officer. "Probable cause exists when based on the known facts and

circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." United States v. Edwards, 769 F.3d 509, 514 (7th Cir. 2014) (quoting United States v. Richards, 719 F.3d 746, 754 (7th Cir. 2013)). The officers had a complaint alleging that someone in a large, white SUV (possibly a Cadillac) had appeared at the victim's home, professed to be a DEA agent and openly displayed a gun in a holster. That person had become offended when the victim said she did not recognize him. The police knew that the defendant's father owned a Cadillac Escalade, and was letting the defendant drive it. They knew that the defendant did not work for the DEA. The defendant admitted during the interview that he knew the victim from high school, had had a crush on her then, and had been at her home. The defendant told the police that he was always armed, that he had several firearms and that he had a pistol in his car. He denied sending the victim Facebook messages, or leaving her a business card with a note on it, but the other facts gave the officers probable cause to believe that the plaintiff had committed the crime of impersonating an officer, and they arrested him on that charge (and on a charge of stalking). This means that any analysis of the validity of the seizure or search of the car starts with the fact that the officers had probable cause to believe that the defendant had committed a crime, and that there was evidence of that crime in the car.

The court also concludes that the officers lawfully obtained the defendant's key fob. When the defendant arrived at the police station, the officers knew that the victim had alleged that the defendant had come to her

home impersonating a DEA agent and armed; knew that he'd become offended when she didn't recognize him; knew that he'd arrived in a large, white SUV, perhaps a Cadillac; knew that his father owned a Cadillac, and was letting him drive it; and knew that he was not employed by the DEA. These facts provided reasonable suspicion that the defendant had committed crimes—stalking, impersonating an officer. "A law enforcement officer can conduct a 'protective pat-down search' during a *Terry* [v. Ohio, 392 U.S. 1 (1968)] stop . . . if the officer has 'at a minimum some articulable suspicion that the subject is concealing a weapon or poses a danger to the [officer] or others . . . .'" Gentry v. Sevier, 597 F.3d 838, 847 (7th Cir. 2010) (quoting United States v. Pedroza, 269 F.3d 821, 827 (7th Cir. 2001)). The officers here had an articulable suspicion that the defendant had been armed in the past, and that he was the person who'd shown up armed at the victim's residence. They were justified in conducting a pat-down search; that is when they recovered the key fob.

Given the fact that the officers had probable cause to believe that the car contained evidence, the court does not agree with the defendant that the government had to provide one exception for impounding the car, and another for searching its interior. Admittedly, courts treat "impoundments and inventory searches as distinctive processes, which are warranted in different (though frequently overlapping) circumstances." Duguay, 93 F.3d at 352 (citing South Dakota v. Opperman, 428 U.S. 364, 368–69 (1976)). "An impoundment must be supported by probable cause or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal

investigation." Id. A routine inventory check of the contents of an impounded vehicle is designed to protect an owner's property while it is in the custody of the policy. Id.

Here, that distinction is irrelevant, because the officers had probable cause. The question is only whether there was any exception to the warrant requirement that justified the officers locating, impounding and searching the car right away, rather than waiting to obtain a warrant. The answer is, as Judge Duffin concluded, that there are.

Police "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." Edwards, 769 F.3d at 514 (quoting Arizona v. Gant, 556 U.S. 332, 351 (2009)). The court has concluded, as did Judge Duffin, that it was reasonable for the police to believe that the car contained evidence that the defendant had impersonated an officer. Given this, while the officers *could have* waited to obtain a warrant before finding, impounding and searching the car, the fact that they did not do so did not violate the Fourth Amendment, because the search-incident exception applied.

"The police do not need a warrant to search a vehicle when they have probable cause to believe that it contains evidence of criminal activity." Edwards, 769 F.3d at 514 (citing, *e.g.*, United States v. Nicksion, 628 F.3d 368, 377 (7th Cir. 2010)). See also, United States v. Williams, 627 F.3d 247, 251 (7th Cir. 2010). Two considerations justify this exception: "the lessened privacy

15

expectation a person has in a car, as opposed to his home, and the ready mobility of a car." United States v. Foxworth, 8 F.3d 540, 545 (7th Cir. 1993) (citing California v. Carney, 471 U.S. 386, 391 (1985)). "The two justifications come into play '[w]hen a vehicle is used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise . . . ." United States v. Parker, No. 16-CR-22, 2016 WL 11448314, at *10 (E.D. Wis. Aug. 15, 2016) (quoting Carney, 471 U.S. at 392). Again, probable cause exists where, based on a totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "It requires a probability, not absolutely certainty, that contraband or evidence of a crime will be found." United States v. Zahursky, 580 F.3d 515, 521 (7th Cir. 2009) (citing United States v. Farmer, 543 F.3d 363, 377 (7th Cir. 2008).

The officers had probable cause to believe that there was evidence of a crime in the car. The defendant objects, however, that at least one of the two justifications—"ready mobility"—weighs against the application of the exception. He points to the fact that at the time the police found, impounded and searched the car, he had been arrested, was in custody and was being transported to another location. He asserts that the car wasn't readily mobile—it wasn't going anywhere.

The Seventh Circuit has applied the automobile exception to a case in which the defendant had been handcuffed and his vehicle had been seized and

was to be impounded. <u>Zahursky</u>, 580 F.3d at 523. The defendant had initiated contact in a chat room with an undercover agent, whom the defendant thought was fourteen years old. <u>Id.</u> at 517. After arranging to meet the "teenager" at a Starbucks in Indiana, the defendant drove from his home in Illinois. <u>Id.</u> Agents were waiting for him; they asked him to step outside, took him into custody and patted him down. <u>Id.</u> at 519. Meanwhile, another agent began to search his vehicle, without a warrant. <u>Id.</u> The district court denied the defendant's motion to suppress all evidence, finding that the officers had probable cause to search the car because that was the only other area available to the defendant to store evidence of the crime. <u>Id.</u>

In affirming, the Seventh Circuit found that probable cause existed from the moment the defendant showed up at the Starbucks. <u>Id.</u> at 522. The agents knew defendant was the was the man they wanted—he was wearing what he said he'd be wearing and he fit the description he'd given in the chat room. <u>Id.</u> The defendant had told the "teenager" that he would be bringing condoms and lubricant with him; the Seventh Circuit concluded that it was reasonable for the agents to believe that the defendant would have left these items in the car. <u>Id.</u>

The defendant argued that none of the policy justifications for the automobile exception applied, particularly where there "was no threat that this car would be moved or become mobile." <u>Id.</u> The Seventh Circuit acknowledged that at the time of the search, the agents had arrested the defendant, put him in custody and seized the car. <u>Id.</u> at 523. The Seventh Circuit found these facts

irrelevant; the court concluded that the car "was inherently mobile and [the defendant] had a lesser expectation of privacy in it." Id. The court pointed out that the agents had no reason to know that the defendant had traveled alone, or that an accomplice would not have some means of mobilizing the vehicle. Id. Although the defendant argued that there were no unforeseeable or exigent circumstances that would have prevented the agents from obtaining a warrant, the Seventh Circuit concluded that the defendant offered nothing to suggest that the agents were required to obtain a warrant. Id.

The circumstances here are remarkably similar, and the automobile exception applies. The officers had a reasonable suspicion that the defendant had committed a crime before they interviewed him; the interview turned that suspicion into probable cause. The officers had no way of knowing whether someone had come to the interview with the defendant. The car was still a car—it was still mobile.

An inventory search is an exception to both the warrant requirement *and* the probable cause requirement. United States v. Cherry, 436 F.3d 769, 772 (7th Cir. 2006) (citing United States v. Wilson, 938 F.2d 785, 788 (7th Cir. 1991)). Because the police had probable cause, the court need not analyze the inventory search exception, or address the defendant's arguments regarding the Racine Police Department impound/search policy.

In sum, the police could have waited until they obtained a warrant to impound and search the Escalade, but the law did not require them to do so.

Both the search-incident-to-arrest and automobile exceptions to the warrant requirement applied.

The defendant argued that even with probable cause, the officers could not seize the Escalade because it was not evidence, and did not contain evidence. As the court has discussed, this is not the case. The defendant asserted that transportation is not a component of stalking or impersonating an officer, and nothing tied his handgun to the incident at the victim's home, when the defendant himself told Klepel that he owned "many guns." The court disagrees; the car was evidence that supported the victim's claim, and the fact that the defendant admitted that he owned guns tied him to the allegation that he'd appeared at the victim's home armed.

Because the court has concluded that the impoundment and search of the Escalade were lawful, it rejects the defendant's claim that the affidavit supporting the warrant was tainted by the fruit of an unlawful search.

Finally, the defendant argued that the information in the warrant was stale. There is no bright line rule for determining staleness. United States v. Sutton, 742 F.3d 770, 774 (7th Cir. 2014). The recency of information provided to the issuing judge is only one factor bearing on the question of probable cause. United States v. Pappas, 592 F.3d 799, 803 (7th Cir. 2010); see also United States v. Watzman, 486 F.3d 1004, 1008 (7th Cir. 2007). "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." Sutton, 742 F.3d at 773.

The court finds no basis to disturb to disturb the finding of probable cause by the Racine County judge. The affidavit supporting the search warrant outlined the investigation leading up to the interview and the defendant's statements during the interview. Dkt. no. 18-4 at 4. The incident at the victim's home might have taken place weeks before Klepel submitted the affidavit, but the defendant's statements at the interview—which provided evidentiary support for the victim's allegations—occurred only days before. Based on Klepel's training and police experience, he stated in the affidavit that people impersonating an officer or stalking commonly possess things like:

> Firearms, firearm related paraphernalia, ammunition, spare ammunition magazines, holsters, duty style service belts with pouches, pepper spray, handcuffs, handcuff keys, batons and badges or other false credentials. It is also common to find uniforms or other clothing allowing subjects to pass as law enforcement personnel.
> . . .
> Repair bills, mail and other documents that can establish the identity of persons in control of the vehicles.
> . . .
> Cellular telephones to facilitate contact with others by use of phone calls, text messages and instant messaging features contained on cellular telephones ... subscriber information, contacts, lists of calls made, received and missed, text messages, GPS data and photographs.
> . . .
> Computer tablets and other electronic devices used to document and store information.

Dkt. No. 18-4 at 4-5.

Klepel explained that the Escalade was connected to the incident at the victim's home. He explained that the defendant had given the victim a card with his name, a phone number and e-mail address, and allegedly had contacted the victim using Facebook (and using an alias).

Given that, electronic evidence, such as that found on devices like telephones and tablets, would be relevant to the charges, and it's unlikely that such evidence would grow stale in the four or five weeks prior to the warrant. Even evidence of a gun does not "automatically grow stale as time passes." United States v. Hicks, 650 F.3d 1058, 1068 (7th Cir. 2011) (citing United States v. Harju, 466 F.3d 602, 608 (7th Cir. 2006)).

The court overrules the defendant's objections to Judge Duffin's recommendation, and will deny the suppression motion.

## III.    Conclusion

The court **OVERRULES** the defendant's objection to Magistrate Judge Duffin's report and recommendation. Dkt. No. 24.

The court **ADOPTS** Judge Duffin's report and recommendation. Dkt. No. 22.

The court **DENIES** the defendant's motion to suppress evidence. Dkt. No. 18.

As noted in its docket annotation of August 30, 2018, the court's staff will contact the parties to select a date and time for a status conference.

Dated in Milwaukee, Wisconsin this 5th day of September, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**