UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JEREMY C. WADE,

        Defendant.

Case No. 18-cr-76-pp

---

**ORDER GRANTING GOVERNMENT'S MOTION *IN LIMINE* (DKT. NO. 53)**

---

      The December 17, 2018 trial date is days away, and the court has not issued a final ruling on the government's motion *in limine* asking the court to "prohibit the defendant from presenting evidence, argument, or remarks designed to induce jury nullification . . . ." Dkt. No. 53. During the final pretrial conference on November 8, 2018, the court heard extensive argument from the parties, and expressed some of its tentative views. The court deferred ruling on the motion, telling the parties that they could file briefs on the issue prior to trial. Dkt. No. 61 at 2. Although it should have, the court did not set a deadline by which the parties needed to file their briefs.

      On November 14, 2018, the government filed its brief. Dkt. No. 60. To date, the defendant has not filed a brief. The court believes, however, that the parties should know the court's ruling in advance of trial, to be able to prepare their presentations. If, after reviewing this decision, the defendant is concerned

that the court has missed significant arguments, or made an error, the defendant may ask the court to reconsider.

**Factual Background**

The indictment alleges that on two occasions—January 25, 2018 and February 2, 2018—the defendant impersonated a DEA agent in violation of 18 U.S.C. §912(1). Dkt. No. 1. According to the police reports filed in connection with the defendant's motion to suppress evidence, in early February 2018, the Racine Police Department received a stalking complaint. Dkt. No. 18-1 at 2. A citizen had contacted the police, reporting that the defendant was impersonating an agent of the Drug Enforcement Administration "in an effort to pursue a relationship with her." Id. The police spoke to the citizen, who explained that on January 25, 2018, the defendant had appeared at her home uninvited. She'd just returned home from work when she saw a large, white SUV, "possibly a Cadillac," pull up in front of the house and park at an "extreme angle," with the grille facing the house. Id. She said that the defendant got out and approached her front door; he was wearing a badge on a lanyard around his neck "and had a 'gun' on his hip;" the citizen described the gun as a "black semi auto." Id. The citizen reported that the defendant was casually dressed; he was not wearing a jacket, so she was able to see the gun and the badge. Id. The citizen answered the door; she reported that the defendant did not introduce himself. Id. He said he was looking for someone named "Zach Light." Id. at 2-3. The citizen said that the defendant showed her

a photo, but the citizen told the defendant that she didn't recognize the person in the photo. Id. at 3.

The citizen said that the defendant then asked the citizen whether the defendant looked familiar to her; when the citizen said she did not recognize him, the defendant "became offended and left." Id. The defendant never had been to the citizen's house before, and she told police that she felt he'd been watching her. Id. The citizen also provided the investigating officer with a business card she'd found in her mailbox on February 2, 2018. Id. The card "was made to look like a DEA business card and identified Jeremy C. Wade as a 'Special Agent.'" Id. There was a hand-written message on the back of the card, "where Wade admits to being at [the citizen's] home and asks for [the citizen] to contact her[1]." Id.

The officer followed up by checking with the DEA, and found out that the defendant did not work with for that agency. Id. In response to requests from the police, the defendant appeared at the police department for an interview, and after receiving his Miranda warnings, the defendant admitted having gone to the citizen's house "about a month ago," but denied knowledge of the business card. Id. at 3-4. The defendant told the officer that he knew the citizen—they had attended and graduated high school together, and the defendant had "had a crush" on the citizen throughout high school but they'd never been involved in a relationship. Id. at 4. The defendant also told the

---

[1] The court suspects that the officer who wrote the report meant to use the word "him," so that the sentence would read, "where Wade admits to being at [the citizen's] home and asks for [the citizen] to contact him."

officer that he was "always armed," that he owned several firearms, and that there was a gun in his car. Id. Officers recovered a pistol and the packaging for a holster from the car the defendant had driven to the interview. Id. at 5.

**Analysis**

In its November 6, 2018 motion *in limine*, the government asked the court—as it does in most cases—to prohibit the defendant from making jury nullification arguments. Dkt. No. 53 at 2. Specifically, the government asked the court to "expressly forbid jury nullification arguments based on the defendant's apparent romantic motive for impersonating a federal officer." Id. The government indicated that it would present evidence at trial showing that the defendant had expressed his romantic interest to the citizen, as well as admitting it to the investigating officer. Id. The government concluded from some of the defendant's proposed *voir dire* questions that the "defendant intends to contend that the internal or personal motivations for his conduct negate his culpability under § 912(1)." Id. The government argued that because 18 U.S.C. §912(1) does not "require proof of any particular *mens rea* other than the *knowing* impersonation [of] an officer of the United States, and the taking of some action in conformity with that representation," the court should preclude the defendant from introducing as evidence the reason that he impersonated the DEA agent. Id. at 2-3. The government stated that the reason the defendant did what he allegedly did was "irrelevant and [does] not negate his liability." Id. at 3.

4

At the final pretrial conference, the defense vigorously disagreed with the government's reasoning. The defense pointed out that §912 required the government to prove more than the simple fact that the defendant pretended to be a DEA agent—it also required the government to prove that he pretended to be a DEA agent "acting under the authority of the United States or any department, agency or officer thereof," and that he had "act[ed] as such . . . ." 18 U.S.C. §912. The defense contended that it was up to the jury to decide whether, if he did pretend to be a DEA agent, the defendant had done so "acting under the authority of" an agency of the United States, and whether he had "act[ed] as such." The defense posited that even if the jury concluded that the defendant had pretended to be a DEA agent, it might conclude that because he'd done it for romantic reasons, he had not been "acting under the authority of" the DEA, or "act[ing] as such." The defense told the court that if, for example, the defendant had dressed up as a DEA agent for Halloween, the government would not have been able to prove a violation of §912; while it could show that he had pretended to be a DEA agent, it would not have been able to show that he was acting under the authority of the DEA because his purpose for pretending to be a DEA agent was to engage in the make-believe associated with the Halloween holiday. Defense counsel questioned how this situation was different—couldn't a jury conclude that the government had not proven that the defendant was acting under the authority of the DEA because his purpose for pretending to be a DEA agent was to somehow further his romantic interest in the citizen?

5

The parties—and the court—argued the issue extensively. The court cited two cases which it believed, at brief glance, supported the government's position: United States v. Rippee, 961 F.2d 677 (7th Cir. 1992) and United States v. Cord, 654 F.2d 490 (7th Cir. 1981).[2] The court told the parties that while it was leaning toward granting the government's motion, it would defer ruling and the parties could file briefs prior to trial.

In its supplemental brief, the government first argued that the purpose of §912 is to protect the government from the injury it suffers when someone impersonates one of its officers; given that, the government argued, fraudulent intent was irrelevant. Dkt. No. 61 at 2-3. The government asserted that to allow the defendant to argue that he should be acquitted because his reason for impersonating an agent was romantic would "ignore[] and undermine[] these purposes." Id. at 3. It cited United States v. Guthrie, 387 F.2d 569, 571 (4th Cir. 1967), United States v. Barnow, 239 U.S. 74, 80 (1915) and United States v. Lepowitch, 318 U.S. 702, 704 (1943) in support of this argument.

Next, the government pointed to the fact that a defendant's reason for committing other kinds of crimes—such as being a felon in possession of a firearm—is not relevant to the question of whether the defendant is guilty of that crime. Id. It pointed the court to United States v. Lane, 267 F.3d 715, 719-20 (7th Cir. 2001) as one example.

---

[2] As it turns out, those cases involved the second clause of §912; the indictment originally charged the defendant with violating that clause, but the government since has dismissed those counts.

6

The government then moved to the crux of the defendant's argument—his view that in order to prove that the defendant impersonated an officer "acting under the authority of the United States," the government would have to prove that the defendant "intended to exercise the authority inherent in a DEA Agent's role, and that if he took actions simply to impress [the citizen] he didn't have the requisite criminal intent." <u>Id.</u> at 4. The government asserted that several courts, including the Seventh Circuit, had rejected this interpretation of §912. <u>Id.</u> The government cited <u>United States v. Hamilton</u>, 276 F.2d 96, 99 (7th Cir. 1960), <u>United States v. Parker</u>, 699 F.2d 177, 177-178 (4th Cir. 1983) and <u>United States v. Robbins</u>, 613 F.2d 688, 692 (7th Cir. 1979) as examples of cases which had rejected the defense interpretation. <u>Id.</u> at 4-7.

Finally, the government asserted that the defendant was attempting to eat his cake and still have it. The government pointed out that the defense had asked the court to prohibit the government from introducing Facebook messages the defendant sent the citizen under a pseudonym, in which he referenced "Zach" and an investigation and attempted to connect with the citizen romantically. <u>Id.</u> at 8-10. The defense had argued that these messages were not relevant to the elements of a §912 violation. The government reminded the court that the government had agreed, but asserted that "the messages are only irrelevant because [the defendant's] romantic interest in [the citizen], and his motivation for, or intention behind the impersonation do not determine whether the elements of the statute are satisfied . . . ." <u>Id.</u> at 10. The government asserted that the defense could not have it both ways—it could not

7

argue that the defendant's prior efforts to connect with the citizen by impersonating someone else were not relevant, then turn around and argue that the defendant's alleged romantic motivation for impersonating someone else was relevant—in fact, was a defense—to the charges in the indictment. Id. at 10-11.

The government framed its motion in terms of jury nullification. It is worth looking at that phrase in this context. If a jury in a criminal case returns a verdict of not guilty, that verdict is not reviewable by any court. United States v. Dougherty, 473 F.2d 1113, 1130 (D. D.C. 1972). A jury in a criminal case can "disregard uncontradicted evidence and instructions of the judge" by returning such an unreviewable not-guilty verdict. Id. In the past, there were those who argued that jurors had a right to return verdicts that disregarded uncontradicted evidence and the law if the uncontradicted evidence and the law would require them to "render verdicts offensive to their individual conscience." Id. at 1133. That argument did not prevail; it has long been controlling law that while juries are capable of nullifying the law, they do not have the right to do so. See United State v. Kerley, 838 F.2d 932, 938 (7th Cir. 1988) (citations omitted). "Jury nullification is a material risk when . . . the jury receives information that invites it to ignore the law." United States v. Rash, 840 F.3d 462, 465 (7th Cir. 2016). A defendant cannot present information that invites the jury to ignore the law.

What the parties' dispute calls on the court to do is to articulate what the law is. The defense has asserted that it would not constitute jury

8

nullification for it to argue that because he was motivated to pretend to be a DEA agent by his romantic interest in the citizen, the defendant was not "acting under authority of the United States." The essence of this argument is that a person does not "act under the authority of the United States" for the purposes of §912 unless he believed that he possessed that authority, or unless he intended to exercise that authority. The government responds that such an argument would constitute jury nullification, because the law does not require the defendant to believe that he had the authority of an agent of the United States, nor does it require that the defendant intended to exercise that authority. The government is correct.

To the extent that the defendant has argued that one cannot be guilty of violating §912 if one does not believe, in his own mind, that he is acting under the authority of the United States, his argument flies in the face of the language of the statute. The opening words of the statute provide that it is unlawful to "*falsely assume[] or pretend[]*" to be an officer acting under the authority of the United States. A person who actually believes that he or she is acting under the authority of the United States isn't "pretending"—to pretend, one has to know that one is making something appear to be the case when it is not. So a mentally ill person trapped in a delusional state where she believes that she is the President would not be "falsely assuming or pretending." A legitimate DEA agent who was fired over the weekend without his knowledge, but who went out to execute a search warrant on Monday morning, would not be "falsely assuming or pretending," because he had reason to believe that he

9

was a DEA agent. To the extent that the law requires scienter or intent, it requires the government to prove that the defendant knew when he represented himself as an officer acting under the authority of the United States that he was not such an officer.

In that same vein, the court opined at the pretrial conference that the words "acting under the authority of the United States" modified the words "officer or employee." In other words, a person would not be guilty of violating §912 if he pretended to be a Milwaukee police officer, or an Interpol officer, or a Magav guard. The "acting under the authority of the United States" language does not refer to whether the defendant actually was acting under the authority of the United States, or thought that he was; it refers to the fact that the government must prove that the defendant pretended to be an officer or employee acting under the authority of *the United States*, as opposed to an officer or employee acting under some other authority.

To the extent that the defendant is arguing that the government must prove that he intended to exercise the authority that an actual DEA agent would have—in other words, that he intended to arrest someone, or conduct a law enforcement investigation, or execute a search warrant—the government correctly points out that courts have rejected that interpretation of the statute. In United States v. Hamilton, the defendant rented a room, telling his landlady that he was a "Federal tax man just come to town." Hamilton, 276 F.2d at 97. He claimed to know another "Federal tax man whose name" the landlady had mentioned; the landlady gave him keys to get in. Later that day, when the

landlady introduced the defendant to her husband as a Federal tax man, the defendant corrected her, saying that he was an F.B.I. agent. Id. The defendant told the couple "of various exploits he had performed in his nineteen years' service with the F.B.I.," showed them a scar that he claimed came from an injury he'd suffered in the line of duty, and wore a gun in front of the landlady and the maid. Id. When the defendant told the landlady that he hoped seeing the gun hadn't frightened her, she responded that "she would have been frightened had she not known [the defendant] to be an F.B.I. agent." Id. The evidence showed that the defendant never had been an F.B.I. agent. Id. at 98.

The defendant argued at trial on the §912 charge that the government had not alleged or proved that he had committed any over act—"act[ed] as such"—"of the kind which defendant would have been authorized to do had he possessed the official capacity he assumed." Id. The Seventh Circuit disagreed. It stated, "The words 'acts as such' as used in Title 18, U.S. Code, 912, under authority of which this prosecution is brought, have been construed to mean acting in the pretended character, and not necessarily doing an act which defendant would have been authorized to do under authority of the assumed capacity." Id. (citing Lamar v. United States, 241 U.S. 103 (1916); United States v. Barnow, 239 U.S. 74 (1915)). The court quoted with approval the district court judge's reasoning:

> I don't think that any citizen of the type that [the landlady] was, and her husband, would ever have tolerated a citizen under the circumstances * * * that day in her home, this afternoon or the subsequent day, to be going through her house with a gun on his person and visible to other people. * * * I don't think that is exactly a case of idle boasting, * * * claiming he is an Agent of the

> Federal Bureau of Investigation. Here's a man that is carrying a gun, and he is a mature man.

Id. The Seventh Circuit concluded, "Defendant's action in wearing firearms in the [landlady's] home was an act in keeping with his pretended character. He said he was an F.B.I. agent, and he was acting as such." Id.

Admittedly, the Seventh Circuit decided Hamilton 103 years ago. But it remains good law. And the court reiterated that reasoning more recently in United States v. Robbins, 613 F.2d 688 (7th Cir. 1979). The evidence at the Robbins trial "established that during late 1977 and early 1978 the defendant represented to several person that he was an FBI agent, or a "NARC." In order to affirm his identity as a federal officer he exhibited to some of these people, at various times, a pistol, a set of handcuffs, and an identification card with a badge." Id. at 689. The government charged the defendant under the first clause of §912, so the court noted that it had to show "two elements the impersonation of an officer and acting as such." Id. at 690. The defendant argued that to prove that he had "acted as such," the government needed to show an intent to defraud (an approach followed by the Fifth Circuit). Id. at 690-691. The Seventh Circuit rejected that argument. It adopted what it called "the Rosser approach," referring to United States v. Rosser, 528 F.2d 652 (D.C. Cir. 1976), which provided that "to 'act as such' would be the equivalent of causing 'the deceived person to follow some course he would not have pursued but for the deceitful conduct.'" Id. at 691. (Also citing United States v. Lepowitch, 318 U.S. 702 (1943)). The court stated that it was "persuaded that

12

the Rosser approach most accurately states the elements of a section 912(1) offense." Id. at 692.

The court also found that the defendant's actions constituted "acting as such" under the Rosser approach. The court stated:

> In the present case, we have a more obvious scheme of impersonation of a federal officer and assertion of that officer's authority [that it did in Hamilton]. The carrying of a pistol, handcuffs, identification card and a badge go beyond "mere bravado." These actions are integral parts of the official routine of an FBI agent. Moreover, we are convinced that the people who tolerated such acts and accorded some deference to Robbins, did so in reliance on the authority that an FBI agent possesses in order to carry out the duties of his profession.
>
> While we are persuaded that the Rosser approach most accurately states the elements of a section 912(1) offense, we conclude that even under these standards the prosecution, by showing that Robbins carried a gun and handcuffs and did so in cashing a check and carrying on his business, alleged and proved acts sufficient to comply with the "acts as such" requirement of the statute.

Id.

The Fourth Circuit used the Rosser approach to similar effect in United States v. Parker, 699 F.2d 177 (4th Cir. 1983). The defendant showed up at the home of a hardwood seller and asked to buy a half a cord of wood. When he learned the price and terms of delivery, the defendant told the seller that he was an IRS agent, investigating a rumor that the seller was not paying sales tax on the firewood. The seller disputed this allegation, the men resumed negotiations, and the defendant ended up buying the half-cord of wood at the buyer's asking price. Id. at 177-78. When the seller delivered the wood, the defendant paid with a personalized check that bore his name and address. The

seller then contacted the IRS, who had an undercover officer contact the defendant and ask if the seller was still under investigation. The defendant replied that the investigation was closed and that there was "virtually no chance" the seller would be audited. When the undercover officer remarked that he (posing as the buyer of the firewood) owed the defendant a favor, the defendant responded that he wished he'd never mentioned the IRS, and that he wanted to be considered "just a friend." Id. at 178.

The defendant admitted that he'd pretended to be an IRS agent, but argued that he had not "acted as such," and that his statements were "in keeping with an innocent masquerade." Id. The Fourth Circuit, using the Rosser approach, disagreed. It concluded that the defendant's conduct "amounted to an assertion of false authority over [the firewood seller], despite the apparent absence of fraudulent intent." Id. at 179. The court found that if the defendant had done nothing more than claim to be an IRS agent, that would not have been enough to violate the "acts as such" element, but that by asserting that he was investigating reports that the seller had not been paying taxes, the defendant "went beyond nonculpable false pretense." Id. The court pointed to other cases, including Robbins and Hamilton, in which courts had reached similar conclusions using similar reasoning. Id. at 180 (citing United States v. Cohen, 631 F.2d 1223 (5th Cir. 1980) and United States v. Harth, 280 F. Supp. 425 (W.D. Okla. 1968)).

In conclusion the Parker court clarified

> that Parker is charged with violating the "acts as such" offense under Section 912 and not with demanding or obtaining anything

> of value while pretending to be a federal officer, the offense proscribed in Section 912. Thus, the government need only show that Parker asserted his pretended authority over [the firewood seller] in some fashion, not that he sought or obtained any material advantage. By demonstrating that Parker asserted the authority to investigate [the seller's] tax status, the government has met its burden of proof.

Id.

The court concludes, as it was inclined to do at the November 8, 2018 final pretrial conference, that it is not a defense to an allegation that the defendant violated the "acts as such" provision of §912 that the reason the defendant pretended to be a DEA agent was because he was romantically interested in the citizen. The defendant cannot present evidence, or argue, that because he was acting out of romantic interest, the government cannot prove that he was "acting under the authority of the United States" or that he "act[ed] as such." The defendant cannot present evidence, or argue, that because he did not intend to investigate someone named Zach Light (or anyone else), or because he did not intend to use his gun the way a law enforcement officer would, the government cannot prove those elements of the offense. Any of those arguments would constitute improper jury nullification—an attempt to convince the jury to return a verdict that nullifies the law.

**Jury Instruction**

The above discussion and ruling are relevant to the parties' dispute over the proper jury instruction for this offense. The Seventh Circuit Pattern Jury Instructions for criminal cases does not include a pattern instruction for §912. The parties disagree regarding the form of the instruction on the substantive

15

charge, and the court discussed that disagreement with them at the final pretrial conference. At that time, the court rejected the defendant's proposal that the court include an "intent to defraud" element in the instruction, agreeing with the government that that language did not comply with Seventh Circuit law. Now, given the Seventh Circuit's approval of the way the court in Rosser handled the issue, it seems reasonable to this court to look to Rosser to determine how to craft a substantive instruction. Rosser said,

> . . . the jury was told that to find Rosser guilty it must find that he had falsely pretended to be an officer or employee of the United States and that he had 'committed some overt act as such employee.' It would have been preferable for the trial judge to have informed the jury that the 'over act' had to involve an assertion of claimed authority derived from the office Rosser pretended to hold. However, the trial judge was not asked to give such an instruction, and the instruction he did give clearly identified the two separate elements of the offense.

Rosser, 528 F.2d at 658.

Guided by that discussion, the court believes that the following instruction appropriately captures the elements of the offense with which the defendant has been charged:

> The indictment charges the defendant with two counts of falsely assuming and pretending to be an officer and employee of the United States, acting under the authority thereof, that is, a Special Agent of the Drug Enforcement Administration, and in such assumed and pretended character acting as such. For you to find the defendant guilty of committing that offense, the government must prove each of the following two elements beyond a reasonable doubt:
>
> 1. The defendant falsely assumed or pretended to be an officer or employee of the Drug Enforcement Agency, and

16

2. As such officer or employee, the defendant committed some overt act involving an assertion of claimed authority derived from the office the defendant pretended to hold.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant guilty of that charge.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove either one of these elements beyond a reasonable doubt as to the charge you are considering, then you must find the defendant not guilty of that charge.

**Conclusion**

The court **GRANTS** the government's motion *in limine* asking the court to prohibit the defense from presenting evidence in support of, or arguing, jury nullification, including its request that the court prohibit the defendant from introducing evidence or arguing that the defendant's romantic motivation is a defense to the second element of the charge. Dkt. No. 53.

Dated in Milwaukee, Wisconsin this 7th day of December, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**